**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ANNETTE M. VOORHIES** | **CASE NO.  6:21-CV-1341** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **U S COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Annette M. Voorhies, fully exhausted her administrative remedies prior to filing this action in federal court.  The claimant filed an application for a period of disability and disability insurance benefits ("DIB"), alleging disability beginning on March 30, 2015.[1]  Her application was denied.[2]  The claimant requested a hearing,[3] which was held on January 6, 2021 before Administrative Law Judge

---

[1]     Rec. Doc. 7 at p. 12. Originally, the claimant alleged an onset date of September 21, 2010; however, at her administrative hearing, she amended her onset date to March 30, 2015.

[2]     *Id.* at pp. 97-100.

[3]     *Id.* at pp. 106-07.

Lawrence T. Ragona.[4]  The ALJ issued a decision on February 3, 2021,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from March 30, 2015 through September 30, 2015, the date last insured. The claimant asked for review of the decision, but the Appeals Council concluded on April 1, 2021 that no basis existed for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on March 30, 1965.[7]  At the time of the ALJ's decision, she was 55 years old.  She has a high school education and two years of college, as well as vocational training in cosmetology.[8]  She has past relevant work experience as a hairdresser.[9]  She alleges that he has been disabled since March 21, 2010 due to

---

[4]    The hearing transcript is found at Rec. Doc. 7 at pp. 27-38.

[5]    *Id.* at pp. 12-21.

[6]    *Id.* at pp. 1-3.

[7]    *Id.* at p. 168.

[8]    *Id.* at p. 197.

[9]    *Id.* at p. 197.

seizures and short term memory loss following the removal of a brain tumor, as well as lack of coordination, issues with her balance, and inability to tolerate loud noises.[10]

## ANALYSIS

### A.     STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[11] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[13]

---

[10]     *Id.* at p. 196.

[11]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[12]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[13]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[14]   In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[15] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[16]   Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[17]

## B.    Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[18]   Every individual who meets

---

[14]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[15]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[16]     *Martinez v. Chater*, 64 F.3d at 174.

[17]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[18]     *See* 42 U.S.C. § 423(a).

certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[19]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[21]

―――――――――――――――

[19]    42 U.S.C. § 1382(a)(1) & (2).

[20]    42 U.S.C. § 1382c(a)(3)(A).

[21]    42 U.S.C. § 1382c(a)(3)(B).

## C.     Evaluation  Process  and  Burden  of  Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[22]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[23]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[24] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[25]  The claimant's residual functional capacity is used at the fourth step to

---

[22]     20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[23]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[24]     20 C.F.R. § 404.1520(a)(4).

[25]     20 C.F.R. § 404.1545(a)(1).

6

determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[26]

The claimant bears the burden of proof on the first four steps.[27]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[28]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[29]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[30]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[31]

---

[26]    20 C.F.R. § 404.1520(e).

[27]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[28]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]    *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[30]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[31]    *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

**D.    THE ALJ'S FINDINGS AND CONCLUSIONS**

In this case, the ALJ determined that the claimant meets the insured status requirements of the Social Security Act through September 30, 2015.[32] He further determined, at step one, that the claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of March 30, 2015 through her date last insured of September 30, 2015.[33] No party challenges this finding.

At step two, the ALJ found that the claimant has the following severe impairments: seizure disorder and late effects of brain tumor. This finding is supported by the evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[34] The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform light work with the following limitations: no exposure to workplace

---

[32]    Rec. Doc. 7 at p. 12.

[33]    *Id.* at p. 14.

[34]    *Id.* at p. 171.

hazards, and she is further limited to 1-2-3 step instructions.[35]  The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing her past relevant work.[36]

At step five, the ALJ found that the claimant was not disabled from March 21, 2015 through September 30, 2015 because there are jobs in the national economy that she could have performed, including housekeeping cleaner and garment bagger.[37]  The claimant challenges this finding.

## E.    THE ALLEGATIONS OF ERROR

The claimant argues that the ALJ committed the following errors:

1.    The ALJ erred in concluding that the claimant can perform work on a daily basis in the light category; and

2.    The ALJ erred in relying on the testimony of the VE, because there are conflicts between the testimony of the VE with respect to job requirements and the actual job descriptions in the Dictionary of Occupational Titles.

The undersigned will consider each alleged error in turn.

---

[35]    *Id.* at p. 16.

[36]    *Id.* at p. 19.

[37]    *Id.* at p. 20.

### 1.    The Claimant's RFC

The claimant argues, generally, that the ALJ erred in concluding that she had the RFC to perform light, unskilled work from March 30, 2015, her amended alleged onset date, through September 30, 2015, the date her insured status expired. Review of the record shows that the ALJ thoroughly reviewed the claimant's medical records from the relevant time period. This medical evidence shows that the claimant has a history of oligodendroglioma, a particular type of cancer that can affect the frontal and temporal lobes of the brain, which necessitated surgery to remove a brain tumor, and cancer radiation in late 2010. This surgery pre-dates her alleged onset date by about five years.[38]

Approximately one year after her surgery, an examination of the claimant by her surgeon, Jason L. Cormier, M.D., showed normal gait, strength, reflexes, and coordination as well as clear and spontaneous speech and no word-finding difficulties.[39] A November 2012 examination by physician assistant Kristin Davies' November 2012 showed normal gait, normal neurological findings, and normal cognitive functioning.[40] In December 2013, Dr. Cormier reported that the claimant

---

[38]    *Id.* at pp. 324-26.

[39]    *Id.* at pp. 280-82.

[40]    *Id.* at pp. 286.

was "doing well overall," and the claimant had normal findings, including a stable brain MRI and no obvious recurrence.[41]

In December 2014, the claimant went to the emergency room complaining of headache, problems with her peripheral vision, dizziness, and intermittent decreased ability to use her right arm.[42]  However, an examination showed normal speech, strength, sensation, judgment, motor functioning, and range of motion.[43]  Mental status examinations at the Neuroscience Center through January 2015 were normal, where the claimant continued to exhibit normal gait, sensation, and motor function.[44] In February and May 2015, oncologist Karen B. Roden examined the claimant and noted normal gait, motor function, insight, and judgment.[45]  On February 13, 2015, Dr. Roden reported that the claimant was "doing well" with no evidence of recurrent disease.[46]

The claimant was examined by Dr. Julana Monti on May 29, 2015.  At that examination, the claimant reported that she had not had any seizures since she began

---

[41]    *Id.* at pp. 288-89.

[42]    *Id.* at p. 301.

[43]    *Id.* at pp. 301-02.

[44]    *Id.* at pp. 334-41.

[45]    *Id.* at pp. 406-07, 598.

[46]    *Id.* at pp. 598.

taking seizure medication in December 2014.[47]  The claimant also reported that she was independent in the activities of daily living.[48]  Dr. Monti's examination showed intact dexterity; 5/5 motor strength; normal sensation, reflexes, and range of motion; and the claimant was able to "walk heel to toe" and stand on tiptoes and heels.[49]  In addition, the claimant's remote and short-term memory were intact, she had orientation to date, location, and situation; she was able to understand conversation and communication clearly; and her insight and cognitive function were intact, despite a "mildly" delayed response time in understanding instructions and responding to questions.[50]  Dr. Monti opined that the claimant could lift/carry up to 20 pounds and sit, stand, and "walk at a slow pace" for eight hours during an eight-hour workday.[51]

In June 2015, the claimant underwent a psychological examination by Sandra B. Durdin, Ph.D.  Dr. Durdin's mental status examination showed average judgment, sustained   attention/concentration,   no   motor/sensory   deficits,   and   normal

---

[47]     *Id.* at p. 457.

[48]     *Id.*
.
[49]     *Id.* at pp. 458-60.

[50]     *Id.* at p. 458.

[51]     *Id.*

affect/mood and speech/language.[52]  Dr. Durdin opined that the claimant had a good ability to understand, recall, and carry out simple instructions despite observing "mildly slowed" paced and memory that was "mildly below baseline."[53]  In addition, Dr. Durdin described the claimant's ability as "not impaired" regarding handling familiar, repetitive, and detailed instructions; sustaining productivity over a forty-hour work week "for lower demand;" and withstanding routine demands, pressure, or expectations "for lower demand."[54]  A July 2015 examination at the Neuroscience Center again showed normal sensation, motor function, and mood/affect.[55]

Nurse Practitioner Lauren Choate's August 2015 examination at Dr. Cormier's office showed normal gait, cognitive function (attention/concentration/memory), and neurological findings, such as intact sensation, 5/5 muscle strength, and normal reflexes and coordination (no impairment in testing of rapid alternating movements).[56]  Ms. Choate reported that the claimant was "doing very well."[57]

---

[52]    *Id.* at pp. 463-66.

[53]    *Id.* at p. 464.

[54]    *Id.* at p. 465.

[55]    *Id.* at pp. 471-72.

[56]    *Id.* at pp. 648-49.

[57]    *Id.* at p. 649.

In September 2015, the claimant reported she was "feeling well" and Dr. Roden's examination was consistent with her prior 2015 examinations showing normal gait, motor function, insight, and judgment.[58]  Dr. Roden's January and May 2016 examinations were also consistent with her prior examinations showing normal gait, motor function, insight, and judgment.[59]

In May 2016, about seven months after the claimant's insured status expired in September 2015, the claimant reported to Dr. Roden that she was "doing well" and "still exercising."[60]

The medical evidence in the record supports the ALJ's RFC assessment, and the claimant cites to no evidence supporting a more reduced RFC during the relevant time period.  The claimant's reference to the November 2020 report of Dr. Virginia Kellner, wherein Dr. Kellner states that "over the past few years," the claimant's cognition progressively declined and her mobility decreased,[61] is of no moment.  It is well-established that evidence showing degeneration of a condition after the expiration of a claimant's Title II insured status is not relevant to the disability

---

[58]     *Id.* at pp. 406-07, 572, 595-96, 598.

[59]     *Id.* at pp. 590, 593.

[60]     *Id.* at pp. 589.

[61]     *Id.* at p. 665.

analysis.[62]    Furthermore, a claimant who becomes disabled after the expiration of her insured status is not entitled to benefits under Title II of the Act.[63]

Thus, the medical evidence in the record supports the ALJ's finding that the claimant had the RFC to perform light, unskilled work from March 2015 through September 2015.  The ALJ accounted for the claimant's residual impairments by limiting her to unskilled work with no more than "1-2-3 step instructions."[64]  As substantial evidence in the record supports this finding, the claimant's argument is without merit.

### 2.    Vocational Experts and the Dictionary of Occupational Titles

ALJ Ragona explicitly determined that, during the relevant time period, the claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b), but limited the claimant to no exposure to workplace hazards and jobs with 1-2-3 step instructions."[65]  The claimant argues that the ALJ erred in determining that she can perform the jobs the VE identified – i.e., housekeeper and garment bagger -- because, according to the descriptions of these jobs in the Dictionary of Occupational Titles

---

[62]    *See McLendon v. Barnhart*, 184 Fed. Appx. 430 (5th Cir. 2006); *Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 (5th Cir. 1981).

[63]    *Torres*, 48 F.3d at 894 n.12.

[64]    *Id.* at p. 16.

[65]    *Id..*

("DOT"), the jobs of housekeeper and garment bagger include exposure to workplace hazards, specifically, moving machinery and unprotected heights. The claimant argues that the ALJ's RFC assessment prohibits these workplace hazards. The claimant also argues that each of these jobs requires only 1-2 step instructions, however, the ALJ determined that she can perform 1-2-3 step instructions. The claimant argues that this inconsistency can only be remedied by remand of this matter.

The DOT and its supplement, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO)*,* comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs.[66] The Commissioner recognizes the DOT/SCO publications as authoritative, and routinely relies on them "for information about the requirements of work in the national economy."[67] In Soc. Sec. R. 00–4p, this policy was clarified and it was noted that "[t]he DOT lists *maximum requirements* of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.

---

[66]    *Gaspard v. Social Security Admin. Com'r*, 609 F.Supp.2d 607, 612-13 (E.D. Tex. Apr. 8, 2009).

[67]    *Gaspard*, 609 F.Supp.2d at 612-13, *citing* Soc. Sec. R. 00–4p, 2000 WL 1898704, at *2.

A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."[68]

ALJs are permitted to rely on either the DOT or VE testimony when determining whether claimants can make adjustments to alternative available work. *See* 20 C.F.R. §404.1566(d), (e) (2005).[69]   It is, therefore, foreseeable (if not inevitable), that in some cases a vocational expert's opinion may, as to a particular claimant's ability to perform alternative work, conflict with the *DOT's* explication of the requirements for particular jobs.[70]   Such conflicts, while relatively rare, occur frequently enough that various federal trial and appellate courts throughout the nation have grappled with how to resolve such conflicts.[71]   Social Security Ruling 00–4p was issued as an interpretive ruling on the subject.

In the Fifth Circuit, an administrative law judge may *in appropriate cases* give greater weight to expert vocational testimony than to findings in the DOT.[72]   One obvious reason is that the DOT provides only *standardized* job information, whereas

---

[68] 2000 WL 1898704, at *2 (emphasis added).  *See also Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986), *holding modified by Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000) (the DOT "simply gives a general description of the duties involved.").

[69]     *Gaspard*, 609 F.Supp.2d at 613.

[70]     *Id.*

[71]     *Id.*

[72]     *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir.2000).

a vocational expert's testimony is tailored to an *individual* claimant's work skills as contained in an administrative law judge's hypothetical question.[73]  But neither source automatically trumps the other, and neither regulation nor case law ranks one source above the other.  Thus, each source initially has equal dignity and effect.[74]

An administrative law judge's discretion to choose between conflicting evidence is not unfettered, however.  In *Carey v. Apfel,* the Fifth Circuit embraced what it called a "middle ground," set forth below:

> When a *direct and obvious* conflict exists, and the administrative law judge fails to explain or resolve the conflict, the probative value of the vocational expert's testimony is so lessened that a reversal and remand for lack of substantial evidence usually follows.  But when the conflict is *tangential, implied or indirect,* and it did not undergo adversarial development at the administrative hearing, the vocational expert's testimony may be accepted and relied upon by the administrative law judge without resolving the later-proffered conflict provided the record reflects an adequate basis for doing so.[75]

Specifically, and notably, the Fifth Circuit has admonished claimants who "scan the record" and raise issues from "the voluminous provisions of the DOT"

---

[73]     *Gaspard*, 609 F.Supp.2d at 613.

[74]     *Id., citing Romine v. Barnhart,* 454 F.Supp.2d 623 (E.D.Tex.2006).

[75]     *Gaspard*, 609 F. Supp. 2d at 613, *citing Care,* 230 F.3d at 146.

after the hearing that were "not deemed sufficient to merit adversarial development in the administrative hearing."[76]

### a.  <u>Requirements of the "Housekeeper" and "Garment Bagger Jobs</u>

With respect to the housekeeper/cleaning position, the claimant argues that the job description for "Cleaner/Housekeeper" includes the following requirements: "moves furniture, hangs drapes, and rolls carpets."  She also argues that the job of "Housekeeper" falls under the Master Title Index for "Cleaners, Any Industry," all of which include the following duties: "replacing light bulbs" and "moving machinery beyond a vacuum."  The claimant argues that hanging curtains and changing light bulbs would require a ladder, which would expose her to unprotected heights, and the use of moving machinery, e.g., polishing and/or waxing machines, would expose her to dangerous machinery.  With respect to the "Garment Bagger" job, the claimant argues that the description of the job in the DOT would expose her to dangerous machinery, including large plastic rolls and heating irons.

---

[76] *See Carey*, 230 F.3d at 146.  *See also Bailey v. Saul*, 853 F. App'x 934, 937 (5th Cir. 2021) (under *Carey*, claimant forfeited argument regarding an implied or indirect DOT conflict that she failed to raise at the hearing); *Young v. Comm'r of Soc. Sec.*, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (citing *Carey* and finding that because claimant did not develop possible conflicts between the VE's testimony and the DOT at the hearing, the claimant "cannot raise it now in this court"); *Adams v. Astrue*, 2009 WL 774845, at *7 n.13 (W.D. La. Mar. 24, 2009) (citing *Carey* and noting that if claimant "harbored any doubts" concerning the sufficiency of the VE's testimony, "she was obliged to raise the issue upon cross-examination, rather than 'saving' it as a basis for appeal").

The claimant also argues that there is an obvious conflict between the VE's testimony and the "reasoning abilities" – set forth in the DOT -- required for the jobs of housekeeper and garment bagger. The DOT categorizes reasoning ability levels from 1 to 6 for each job defined therein. Both the housekeeping and garment bagger jobs are rated as "Reasoning Level 1," which contains the following criteria:

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.[77]

The claimant argues that under the ALJ's findings, she is limited to jobs with 1-2-3 step instructions. Because Reasoning Level 1 contemplates only one- and two-step instructions -- and not 3 step instructions – the claimant argues that there is a conflict requiring remand.

### b.   **Workplace Hazards**

In this case, the Commissioner argues that the alleged conflict concerning workplace hazards is, at best, tangential or implied, and the undersigned agrees. As an initial matter, review of the job description for both "Housekeeper" and "Bagger" in the DOT shows that "moving mechanical parts" and "high exposed places" are activities and/or conditions that expressly do not exist within the job descriptions.[78]

---

[77]    *See Dictionary of Occupational Titles,* Vol. II, App. C § III.

[78]    *See* DOT §§ 323.687-014 and 920.687-018.

Thus, there is no direct conflict between the testimony of the VE and the DOT regarding workplace hazards, because the job requirements as specifically defined by the DOT do not conflict with the VE's testimony and the ALJ's conclusion. To the extent that there may be internal inconsistencies within the DOT job description itself – that is, to the extent that the job specifically states there are no workplace hazards associated with the job but the job also involves tasks that might involve ladders and machinery -- the undersigned notes that the DOT lists *maximum requirements* of occupations as generally performed, not the range of requirements of a particular job as it is performed in a specific setting.[79] Consistent with the foregoing, the DOT itself contains a special notice indicating that occupational information contained therein merely reflects jobs as they generally have been found to occur and warns that the descriptions may not coincide in every respect with the content of jobs as performed in particular industries, establishments, or locations.[80] Therefore, the jobs as they are actually performed may not involve the workplace hazards argued by the claimant, and there is no direct conflict between the DOT job description and the testimony of the VE.

---

[79]    *See* SSR 00-4p, 2000 WL 1898704, at *3 (emphasis added).

[80]    *See* U.S. Dep't of Labor, DOT xiii (4th ed. 1991). *See also Fields, infra*, at 1171 (the DOT "simply gives a general description of the duties involved.").

Because any conflict between the job descriptions in the DOT and the testimony of the VE is indirect, the burden was on the claimant to raise the issue of a potential conflict at the administrative hearing.  Neither the claimant nor her representative questioned the VE about the DOT or challenged the consistency between the VE's testimony and the DOT, and no adversarial development of this issue was raised at the administrative hearing.  For this reason, the VE's testimony may be accepted and relied upon by the ALJ without resolving the later-proffered conflict, as the record supports the conclusion that any conflict regarding workplace hazards is indirect.[81]  Considering the foregoing, the claimant's emphasis on the DOT is misplaced.  Once the Commissioner finds that jobs in the national economy are available to the plaintiff, the burden of proof shifts back to the plaintiff to rebut this finding.[82]  Here, the claimant has failed to rebut the step five finding.

**c.    <u>Reasoning ability</u>**

The claimant also argues that the jobs of Housekeeper/Cleaner and Garment Bagger require only 1-2 step instructions, however, the ALJ determined that she can perform 1-2-3 step instructions.  The claimant argues that this inconsistency can only be remedied by remand of this matter.

---

[81]    *Gaspard*, 609 F. Supp. 2d at 613, *citing Carey v. Apfel,* 230 F.3d at 146.

[82]    *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987).

This manufactured argument is without merit. The claimant argues that under the ALJ's findings, she is limited to jobs with 1-2-3 step instructions. Because Reasoning Level 1 contemplates only one- and two-step instructions -- and not 3 step instructions – the claimant argues that there is a conflict requiring remand. To the extent that the ALJ concluded that the claimant can perform 1-2-3 step instructions, and he determined that the jobs of Housekeeper/Cleaner and Garment Bagger require only 1-2 step instructions, there is no conflict, as the claimant is expressly able to perform both jobs from a reasoning standpoint. In other words, there is substantial support for the ALJ's determination that the claimant can perform these 2 jobs, which require only 1-2 step instructions, because the ALJ concluded that the claimant can perform 1-2-3 step instructions.

## CONCLUSION AND RECOMMENDATION

Thus, for the foregoing reasons, the undersigned finds that the ALJ's findings are supported by substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 2nd day of September, 2022.

_____
Carol B. Whitehurst
United States Magistrate Judge